

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. SC-19-1192-SLG |
| GINA GUTIERREZ CASTILLO, | Bk. No. 3:18-bk-07217-LT7 |
| Debtor. | Adv. No. 3:19-ap-90037-CL |
| GINA GUTIERREZ CASTILLO, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| DEUTSCHE BANK NATIONAL TRUST CO; OCWEN LOAN SERVICING LLC, | |
| Appellees. | |

Argued and Submitted on March 26, 2020

Filed – April 16, 2020

Appeal from the United States Bankruptcy Court
for the Southern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable  Christopher B. Latham, Bankruptcy Judge, Presiding

———————

Appearances:    Appellant Gina Gutierrez Castillo argued pro se; Gary E. Devlin of Hinshaw & Culbertson LLP argued for appellees.

———————

Before: SPRAKER, LAFFERTY, and GAN, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Gina Gutierrez Castillo appeals from the dismissal with prejudice of her adversary proceeding against Deutsche Bank National Trust Co ("Deutsche") and Ocwen Loan Servicing LLC ("Ocwen").

Castillo has not demonstrated that the bankruptcy court incorrectly dismissed her lawsuit under the doctrines of claim preclusion and issue preclusion. Accordingly, we AFFIRM.

## FACTS

### A.    The 2003 mortgage transaction.

Castillo admits that, in July 2003, she entered into a residential mortgage transaction with Equity 1 Lenders Group ("Equity 1"). Indeed,

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

she attached as exhibits to her adversary complaint copies of the note and deed of trust she executed. The attached note for $407,000.00 names Equity 1 as the lender and Castillo as borrower. There are two indorsements on the face of the note, one by Equity 1 in favor of Impac Funding Corporation ("Impac") and another in blank made by Impac. The deed of trust, recorded in July 2003, similarly names Equity 1 as lender and Castillo as borrower. It also names Mortgage Electronic Registration Systems, Inc. ("MERS") as beneficiary but solely as nominee for the lender and its successors. The deed of trust identifies the collateral as Castillo's residence on Pointe Parkway in Spring Valley, California.

Castillo also referenced and attached to her adversary complaint a copy of an assignment of deed of trust recorded in October 2012 assigning the beneficial interest in the deed of trust from MERS to Deutsche. Notwithstanding the above documents, Castillo claims that the lender's rights under the note and the beneficiary's rights under the deed of trust never were properly transferred to Equity 1's successors in interest.

B.    **The 2010 action.**

The underlying adversary proceeding was not the first time Castillo challenged the validity of these transfers. In January 2010, Castillo commenced a lawsuit in the San Diego County Superior Court against Equity 1, MERS, ETS Services, Impac, GMAC Mortgage, and others ("2010 Action"). Her complaint included causes of action for: (1) quiet title; (2)

unfair business practices; (3) violation of 15 U.S.C. § 1639(h); (4) conspiracy to commit fraud and conversion; (5) conspiracy to commit fraud related to MERS; and (6) declaratory relief.[2] In relevant part, Castillo alleged that none of the defendants were "holders of the note" or otherwise were entitled to enforce the note. She also alleged that the assignment of the deed of trust was invalid. In addition, Castillo claimed that each lender, servicer, creditor, owner, or "Note Holder" was required by law to provide proof that they actually had rights in the loan Equity 1 originated and in the note and the deed of trust.

Castillo admitted in her complaint that she used the loan funds to purchase her residence in 2003, but she asserted that the foreclosure proceeding commenced in 2009 was improper because none of the defendants were entitled to enforce the note. Based on the above, Castillo requested that the state court enter a judgment determining, among other things, that the foreclosure proceedings were invalid. After the state court granted the defendants' demurrer with leave to amend, Castillo requested dismissal of the 2010 Action without prejudice, which the state court granted.

## C.    The 2014 action.

In January 2014, Deutsche commenced a judicial foreclosure action in the San Diego County Superior Court against Castillo ("2014 Action").

---

[2] Neither Deutsche nor Ocwen were named as defendants in the 2010 Action.

4

Castillo filed a cross-complaint against Deutsche for quiet title, declaratory relief, and injunctive relief. She alleged that Deutsche was not the holder of the note and that the assignment of the deed of trust was invalid. She also claimed that the securitization of her note and deed of trust extinguished or satisfied any obligation for which she originally was liable.[3] Castillo further alleged that Deutsche committed perjury when it claimed in its complaint that it had possession of the original note and deed of trust.

Castillo later amended her cross-complaint to include a new cause of action for cancellation of instruments. Her amended cross-complaint thus stated two causes of action, one for declaratory relief and the other for cancellation of instruments. Castillo still claimed that Deutsche was not the holder of the note or the beneficiary under the deed of trust. But she also alleged that the purported transfer of the note and the purported assignment of the deed of trust (both to Deutsche) were illegal and invalid because the transfer violated the terms of the "REMIC Trust" documents pursuant to which Deutsche purportedly took its interest in the pooled

---

[3] According to Castillo's cross-complaint, the securitization of her loan effectively satisfied her obligation to repay the loan. In 2013, in furtherance of this so-called satisfaction, she executed and recorded as the "Settlor" a document entitled "Notice of Reconveyance." She attached this purported Notice of Reconveyance to her cross-complaint. Castillo spent a great deal of time during her oral argument before this panel asserting that her Notice of Reconveyance was ignored by both the state court and the bankruptcy court. But she did not explain how or why her claims regarding the Notice of Reconveyance could escape the preclusive effect of the state court's grant of Deutsche's demurrer without leave to amend.

mortgage notes (including Castillo's note). In the process of making this allegation, she abandoned her earlier claim that securitization of her note extinguished or satisfied her loan obligations. Nonetheless, she maintained that, as a result of the violations of the REMIC Trust documents, Deutsche had no legal or equitable interest in her note and her deed of trust, and no right to payment.

The state court granted Deutsche's demurrer without leave to amend. The state court reasoned that Castillo lacked standing to enforce any violation of the securitization trust documents. The court explained that any "assignment merely substituted one creditor for another, without changing her obligations under the note." Castillo never appealed this ruling.

As for the judicial foreclosure part of the 2014 Action, a series of procedural missteps occurred, which resulted in entry of a default judgment against Deutsche and a subsequent order vacating that judgment. As part of the order vacating the default judgment, the state court specifically found: "Plaintiff [Deutsche] submits undisputed evidence that Defendant Gina Castillo is in default and indebted to Plaintiff under the Note in the amount of $514,808.14. . . . The court finds Plaintiff establishes it has a meritorious case." San Diego County Superior Court Minute Order (Mar. 30, 2017) at p. 2. After the court granted the motion to vacate, it also granted Deutsche's request that the judicial foreclosure

6

action be dismissed without prejudice.

Castillo appealed the order vacating the default judgment, but the California Court of Appeal affirmed. Though the court of appeal noted that Deutsche had been required to show that it had a meritorious case and that Deutsche met this burden by submitting a declaration showing that it "is the current beneficiary of the trust deed and promissory note," the court of appeal indicated this merely showed that Deutsche had established its prima facie case. The court of appeal further emphasized that it did not consider the issue of Deutsche's right to enforce the note conclusively established for purposes of the underlying judicial foreclosure action.

**D.    The 2018 action**.

Deutsche then proceeded with its efforts to conduct a nonjudicial foreclosure. But in September 2018, Castillo initiated yet another action in the San Diego County Superior Court ("2018 Action"). This time, she stated eleven different causes of action.[4] In addition to Deutsche, she also named Ocwen as a defendant.[5] Among other things, Castillo alleged that none of

---

[4] The stated causes of action were: (1) Violation of California Homeowner Bill of Rights; (2) Violations of California Civil Code § 2923.5; (3) Cancellation of Written Instruments; (4) Negligence; (5) Constructive Fraud; (6) Intentional Infliction of Emotional Distress; (7) Slander of Title; (8) Quiet Title; (9) Declaratory Relief; (10) Violation of Business and Professions Code §§ 17200, et seq.; and (11) Fraud in the Concealment.

[5] The other named defendants were MERS and Western Progressive LLC (the successor trustee under the deed of trust).

the defendants could establish proper possession, transfer, and endorsement of the note. According to Castillo, they also could not establish proper assignment of the deed of trust. As a result, Castillo asserted that none of the defendants had any interest or standing to take action under the note or deed of trust, or to initiate foreclosure proceedings. Her causes of action for quiet title and declaratory relief were both premised on the defendants' lack of possession and improper transfer of the note, together with the improper assignment of the deed of trust. In her prayer for relief, Castillo requested judgment "[t]hat the Trustees of the Trusts have no enforceable secured or unsecured claim against the Property."

The state court sustained the defendants' demurrer without leave to amend. The state court held that Castillo failed to state a viable cause of action because of the claim and issue preclusive effect of the prior decisions in the 2010 Action and the 2014 Action. As the court explained, the decision in the 2010 action was based on the court's determination that defendants had authority to initiate foreclosure proceedings regardless of Castillo's allegations that none of the defendants held the note and that the assignment of the deed of trust was invalid. Meanwhile, the decision in the 2014 Action sustaining the demurrer against Castillo's amended cross-complaint was based on the determination that Castillo lacked standing to challenge the securitization of her home loan. According to the court,

Castillo's complaint in the 2018 Action "asserts the same claims based on the same facts, same loan, same deed of trust, and same challenges to Deutsche Bank's right to foreclose that were litigated in the 2010 and 2014 lawsuits."

In the alternative, the court held that Castillo could not challenge the assignment of the deed of trust, at least prior to foreclosure. The court also rejected the notion that any of the defendants needed to possess the original promissory note in order to conduct a nonjudicial foreclosure.

## E.     Castillo's bankruptcy and her adversary proceeding.

Castillo commenced a chapter 13 bankruptcy case in December 2018. The bankruptcy court converted the case to chapter 7 in October 2019.

Meanwhile, in March 2019, she filed her adversary complaint against Deutsche and Ocwen for a determination of the validity of the lien and for declaratory relief. By way of her complaint, Castillo stated that she sought not only to determine the validity of the defendants' lien on her residence but also to object to any claim asserted by them.[6] Just as she stated in her complaint in the 2018 Action, Castillo alleged that neither of the defendants could establish possession or proper transfer and endorsement of the note, or proper assignment of the deed of trust. Among other things, she claimed that without a proper transfer of the note to the defendants, the purported

---

[6] At the time Castillo commenced the adversary proceeding, Deutsche had not yet filed its proof of claim. Deutsche did not file its proof of claim until May 2019.

assignment was a nullity.

In her first claim for relief, Castillo asserted that Deutsche had not shown that it had possession of the original note, or that the note was endorsed in its favor. Castillo further reasoned that the attempted assignment of the deed of trust was invalid without proof that Deutsche held the original note. In her second claim for relief, Castillo essentially asked for a judicial determination of rights with respect to the validity of the deed of trust and regarding the defendants' claimed interest in her residence.

**F.      The defendants' Civil Rule 12(b)(6) motion and the bankruptcy court's ruling.**

In April 2019, Deutsche and Ocwen moved to dismiss the adversary proceeding under Civil Rule 12(b)(6). They principally argued that the rulings in all three state court actions were binding on Castillo and that the preclusive effect of all three of those actions barred Castillo's claims for relief. Alternately, they argued that Castillo lacked standing to challenge either the validity of the assignment of the deed of trust or the securitization of her home loan. Finally, they contended that California law did not require either of them to produce the original promissory note in order for them to conduct a nonjudicial foreclosure.

After holding a hearing on the motion to dismiss, the bankruptcy court took the matter under submission. On July 12, 2019, the bankruptcy

court entered its order granting the motion to dismiss. The court held that Castillo's claims were barred by both claim preclusion and issue preclusion. Castillo timely appealed.[7]

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(K). We have jurisdiction under 28 U.S.C. § 158.

---

[7] While on appeal, Deutsche and Ocwen filed a motion to strike portions of Castillo's reply brief. They contend that Castillo has introduced evidence and arguments not presented in the bankruptcy court or in her opening brief. In response, Castillo posits that appellees opened the door to the contested subject matter, which she included in direct response to points raised in appellees' responsive brief. This subject matter pertained to the "notice of reconveyance" that Castillo herself executed and recorded in 2013. She claimed that this document extinguished the lien created by her 2003 deed of trust. The subject matter additionally included her assertion that appellees' failure to file a proof of claim before commencement of her adversary proceeding meant that she could not propose a chapter 13 plan unless she placed at issue, by way of her adversary proceeding, the appellees' claimed interest in the note and the deed of trust.

The so-called notice of reconveyance was not specifically and distinctly argued in Castillo's opening appeal brief. Nor did the appellees place it at issue in their responsive appeal brief. We generally do not consider arguments omitted from appellant's opening brief. *See Loher v. Thomas*, 825 F.3d 1103, 1119 (9th Cir. 2016) (quoting *Chadd v. United States*, 794 F.3d 1104, 1110 n.4 (9th Cir. 2015)). Accordingly, we will strike that part of Castillo's reply brief.

As for the argument regarding the necessity of commencing an adversary proceeding for purposes of establishing Deutsche's and Ocwen's lien rights and advancing her former chapter 13 case, we found references to this argument both in Castillo's opening brief and in her response to the motion to dismiss filed in the bankruptcy court. Though this argument is of little relevance to our analysis and resolution of this appeal, which turns on the preclusive effect of the rulings in the prior state court actions, we will not strike this argument. Therefore, appellees' motion to strike is hereby ORDERED GRANTED IN PART AND DENIED IN PART.

**ISSUES**

1.   Did the bankruptcy court correctly apply claim preclusion in dismissing Castillo's adversary proceeding without leave to amend?

2.   Did the bankruptcy court correctly apply issue preclusion in dismissing Castillo's adversary proceeding without leave to amend?

**STANDARDS OF REVIEW**

Decisions applying claim preclusion are subject to de novo review. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citing *United States v. Silverman*, 861 F.2d 571, 576 (9th Cir. 1988)).

We also review de novo the bankruptcy court's determination whether issue preclusion is available. *Tomkow v. Barton (In re Tomkow)*, 563 B.R. 716, 722 (9th Cir. BAP 2017). If it is available, we then review for an abuse of discretion the bankruptcy court's decision to apply issue preclusion. *Id.* A bankruptcy court abuses its discretion if it applies an incorrect legal rule or its factual findings are illogical, implausible, or without support in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## DISCUSSION

**A.    Civil Rule 12(b)(6) legal standards**.

Civil Rule 12(b)(6) motions can test the legal sufficiency of the plaintiff's complaint in two different ways. First, they can question whether the complaint presents any cognizable legal theories. And second, they can ask whether the complaint contains sufficient factual allegations that, if accepted as true, support those legal theories. *See Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

Courts generally must accept as true all well pled factual allegations. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). But courts do not accept as true conclusory allegations or statements of the law cast as factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Nor do courts accept as true "unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Though the Civil Rule 12(b)(6) inquiry generally is limited to the allegations set forth in the complaint, the court also may consider items

13

properly subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Judicially noticeable facts include those "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). When the complaint's allegations are at odds with matters that are properly the subject of judicial notice, the court need not accept those allegations as true when considering a motion to dismiss. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Courts also may consider documents attached to and referenced in the complaint as exhibits. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001), *partially overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). Courts additionally may consider documents, though not attached to the complaint, whose existence, contents, and authenticity are not contested and are necessarily relied on in the complaint. *See Ritchie*, 342 F.3d at 907–08; *Lee*, 250 F.3d at 688.

**B.    Preclusion analysis**.

Federal courts must give full faith and credit to final decisions rendered in state court. 28 U.S.C.A. § 1738; *McProud v. Siller (In Re CWS Enters., Inc.)*, 870 F.3d 1106, 1119 (9th Cir. 2017) (citing *Gayden v. Nourbakhsh*

14

*(In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995)). This means that state court decisions are entitled to the same preclusive effect in bankruptcy court as they would be given under state law. *Id.* Castillo challenges both the bankruptcy court's rulings on claim and issue preclusion. We address each in turn.

### 1.    Claim preclusion.

California gives claim preclusive effect to a state court decision when the "'second suit involves: (1) the same cause of action (2) between the same parties [or parties in privity with them] (3) after a final judgment on the merits in the first suit.'" *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016) (quoting *DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 824 (2015)) (bracketed phrase in *Furnace*).

The bankruptcy court methodically addressed each of the claim preclusion elements. It determined that Castillo placed at issue the same cause of action or primary right in each of the state court actions as well as in the adversary proceeding. It also determined that each lawsuit involved the same parties or those in privity with them. It further held that each of the state court decisions ended in a final judgment on the merits.

#### a.    Same cause of action.

On appeal, Castillo argues that the claim asserted in her adversary proceeding was not raised in any of her state actions. According to Castillo, her sole claim for relief stated in her adversary proceeding is based on a

15

federal law right conferred upon her pursuant to Rule 7001.[8] That rule of bankruptcy procedure identifies certain types of actions as adversary proceedings that are governed by Part VII of the rules. More specifically, Rule 7001(2) provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property" is an adversary proceeding. The rule is not a legislative enactment of Congress. It does not confer any substantive rights or create any new causes of action. It is merely a procedural rule that delineates which bankruptcy court contested matters qualify as adversary proceedings. *See Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1189 (9th Cir. 2011).

Contrary to her argument, the allegations of Castillo's adversary complaint, as well as those set forth in her complaints and cross-claims filed in state court, all sought a determination of the parties' rights under state law. More particularly, she has consistently sought a determination of the defendants' rights, if any, under the note and deed of trust she executed in 2003 in exchange for a loan that enabled her to buy her home.

In California, "two suits involve the same cause of action when they involve the same 'primary right.'" *Furnace*, 838 F.3d at 1024 (citing *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009)). Under the primary rights

---

[8] Castillo effectively has admitted that she only asserted in the adversary proceeding a single claim for relief. Her declaratory relief claim was entirely derivative of her claim to determine the validity of the lien.

doctrine, a single cause of action consists of a primary right of the plaintiff, a primary duty of the defendant, and a wrongful act breaching that duty. *Mycogen Corp. v. Monsanto Co.*, 28 Cal. 4th 888, 904 (2002) (citing *Crowley v. Katleman*, 8 Cal. 4th 666, 681 (1994)). "'The most salient characteristic of a primary right is that it is indivisible: the violation of a single primary right gives rise to but a single cause of action.'" *Id.* (quoting *Crowley*, 8 Cal. 4th at 681).

Here, Castillo has completely ignored in her appeal briefs the primary rights doctrine, even though the state court in the 2018 Action and the bankruptcy court in the adversary proceeding both relied on this doctrine in rendering their decisions. Regardless, in all three state court actions, and again in the bankruptcy court, Castillo sought a determination that none of the defendants had a right to enforce the note and the deed of trust. In short, the primary right she asserted was the right to be free from any asserted interests in the note and the deed of trust that might interfere with her quiet enjoyment of her residence. *Cf. Crowley*, 8 Cal. 4th at 681 ("the primary right is simply the plaintiff's right to be free from the particular injury suffered.").

Her legal theories varied, as did her allegations. She also included in her state court actions other causes of action arising from alleged injuries to other primary rights. But the underlying primary right asserted in her adversary proceeding – pertaining to the same note and deed of trust – was

the same one decided against her in state court. In all three state court actions, the defendants succeeded in obtaining demurrers without leave to amend with respect to Castillo's cause of action arising from this same primary right.

Castillo posits that, because she sought damages in state court and, instead, was only seeking declaratory relief in bankruptcy court, the same cause of action element for claim preclusion is not satisfied. But California law is clear. A variation in remedies sought does not mean the cause of action is different. As stated in *Crowley*:

> The primary right must also be distinguished from the remedy sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other."

*Crowley*, 8 Cal. 4th at 682 (quoting *Wulfjen v. Dolton*, 24 Cal. 2d 891, 894–895 (1944)). In short, Castillo has not pointed to anything which demonstrates that her adversary proceeding was based on a different cause of action or primary right than her three state court actions.

### b. Identity of parties.

Castillo next argues that claim preclusion does not apply because there is no identity of parties. She points out that Deutsche was not a party in the 2010 Action, and Ocwen was not a party in either the 2010 Action or the 2014 Action. But she has not attempted to explain why they were not in

privity with their predecessors, who Castillo named as defendants in both the 2010 Action and the 2014 Action. More importantly, Castillo focuses on these two prior actions and ignores her most recent state court action – the 2018 Action. Both Deutsche and Ocwen were named as defendants in the 2018 Action. These same defendants were the sole defendants in the adversary proceeding. The bankruptcy court principally gave preclusive effect to the final decision in the 2018 Action, and there was a strict identity of parties between the adversary proceeding and the 2018 Action.

Even if we were to consider the identity of parties in the 2010 Action and the 2014 Action, claim preclusion does not require that the identical parties be involved in both actions. Claim preclusion applies where the parties on both sides of the litigation are the same in both suits, or the parties in the second suit are in privity with those named in the first suit. *Furnace*, 838 F.3d at 1028 (citing *DKN Holdings*, 61 Cal. 4th at 825). At its core, "[t]he concept of privity for the purposes of res judicata or collateral estoppel refers to a mutual or successive relationship to the same rights of property . . . ." *Citizens for Open Access to Sand & Tide, Inc. v. Seadrift Ass'n*, 60 Cal. App. 4th 1053, 1069 (1998) (quoting *Zaragosa v. Craven*, 33 Cal. 2d 315, 318 (1949)) (internal quotation marks omitted).

By virtue of its status as successor beneficiary under the recorded

assignment of deed of trust, Deutsche was in privity with Impac,[9] who was named as a defendant in the 2010 action. In turn, Deutsche has acknowledged Ocwen as its servicing agent, which makes Ocwen the successor to GMAC Mortgage, who was named as a defendant in the 2010 Action. Even though Castillo disputes the respective roles of Deutsche and Ocwen, she does not address the issue of privity in her appeal briefs.

Moreover, Castillo was the plaintiff (or cross-claimant) in all four lawsuits. In sum, there was a sufficient identity of parties to support the bankruptcy court's claim preclusion ruling. Thus, we reject Castillo's identity of parties argument.

### c. Castillo's other arguments against claim preclusion.

Castillo alternately disputes the bankruptcy court's application of claim preclusion by focusing on the 2014 Action. She effectively asserts that there never was a final decision on the merits against her in that action. She points to the fact that the trial court in that action initially dismissed Deutsche's judicial foreclosure complaint with prejudice. Subsequently, the trial court vacated that dismissal and instead granted Deutsche's request

---

[9] Impac's predecessor role in the note and deed of trust is reflected by the first endorsement on the note, which was made by Equity 1 – the original lender – in favor of Impac. While we have not seen any assignment of the deed of trust to Impac, the security is incident to and follows the note even without formal assignment. *See Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 927 (2016) (citing Cal. Civ. Code § 2936; *see also Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The transfer of the note carries with it the security, without any formal assignment or delivery, or even mention of the latter.").

for a voluntary dismissal without prejudice. The California Court of Appeal affirmed the latter disposition on appeal. Castillo posits that this procedural history does not establish that Deutsche was entitled to claim preclusion arising from the 2014 Action.

Castillo's analysis completely ignores the state court's grant of a demurrer without leave to amend against her first amended cross-claims asserted in the 2014 Action. Castillo never appealed that decision. That decision, along with the decision in the 2010 action, lead the state court in the 2018 Action to grant Deutsche's and Ocwen's demurrer without leave to amend based on claim preclusion and issue preclusion. The claim preclusion rules we articulated above apply to the dismissal with prejudice of Castillo's cross-claims. *See Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 133 Cal. App. 4th 1319, 1330–32 (2005). Simply put, Castillo has failed to offer any reason why claim preclusion would not apply to the dismissal with prejudice of her cross-claims in the 2014 Action. Nor are we aware of any. Her argument based on the procedural history of the 2014 Action also ignores the rulings in the 2010 Action and the 2018 Action and their entitlement to claim preclusive effect.

The only other claim preclusion argument Castillo makes concerns the impact of the bankruptcy court's claim preclusion ruling on her bankruptcy case. Castillo maintains that the bankruptcy court's application of claim preclusion interfered with her ability to formulate a chapter 13

21

plan (and presumably led to the conversion of her case to chapter 7). As she puts it, as a matter of bankruptcy law and policy, "[t]he Bankruptcy Court must have the ability to determine the validity and/or extent of a lien," and "the Bankruptcy Court has ruled that the Debtor/Plaintiff/Appellant cannot seek such a determination." Aplt. Opn. Br. at 8, 12-13.

Castillo's argument misses the point. By applying claim preclusion, the bankruptcy court was not refusing to determine the validity of Deutsche's lien. Her prior state court actions had already decided those claims, and the bankruptcy court held that under the full faith and credit doctrine and under California claim preclusion law, Castillo was barred from relitigating those claims because Castillo already had brought three state court actions based on the same primary right and had lost in each instance.

California courts apply claim preclusion to prevent parties from re-litigating causes of action or primary rights that they already have litigated, or were required to litigate, in a prior action. *Mycogen Corp.*, 28 Cal. 4th at 896–97. Here, the bankruptcy court held that Castillo already had litigated, multiple times, the primary rights pertaining to her 2003 note and deed of trust. Castillo has not pointed us to any error in the bankruptcy court's claim preclusion ruling.

2. **Issue preclusion.**

Because we are prepared to uphold the bankruptcy court's claim

preclusion ruling, it is not strictly necessary to address the bankruptcy court's issue preclusion ruling. Furthermore, in her appeal Castillo focused almost exclusively on the court's claim preclusion ruling. Even when she attempted to address issue preclusion, much of her argument reverted back to the same meritless points she made when challenging the court's claim preclusion ruling. Nonetheless, for the sake of completeness, we briefly address the court's issue preclusion ruling.

California law recognizes the following issue preclusion elements:

(1) the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding, (2) the issue must have been actually litigated in the former proceeding, (3) the issue must have been necessarily decided in the former proceeding, (4) the decision in the former proceeding must be final and on the merits, and (5) the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.

*In Re CWS Enterprises, Inc.*, 870 F.3d at 1119 (9th Cir. 2017) (citing *Lucido v. Superior Court*, 51 Cal. 3d 335, 341 (1990)). Even when these five threshold elements are satisfied, before applying issue preclusion, a California court also must satisfy itself that such application would further the public policy concerns underlying the doctrine. *Lucido*, 51 Cal. 3d at 343. Those policy concerns are: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.*

23

The bankruptcy court duly considered all of the threshold factors, as well as the underlying policy concerns, before applying issue preclusion to Castillo's adversary complaint. Castillo cites the issue preclusion factors, but she has not articulated at all how the bankruptcy court erred when it determined that each of these factors has been met. She merely reiterates her argument that her claim for relief under Rule 7001(2) to determine the validity of Deutsche's lien was different than the claims she asserted in state court. We already have rejected this argument for purposes of our claim preclusion analysis. For those same reasons, the argument does not support reversal of the bankruptcy court's issue preclusion ruling.

Castillo next reiterates her contention that the bankruptcy court's decision interfered with her chapter 13 case. She reasons that because the ruling prevented her from filing a chapter 13 plan, it was contrary to bankruptcy policy. We disagree. The bankruptcy court determined that the parties' rights and liabilities with respect to the note and the deed of trust already had been fixed pursuant to state law in the three state court actions – the 2010 Action, the 2014 Action, and the 2018 Action. It is a fundamental principal of bankruptcy law that state law controls the parties' rights and liabilities unless specifically overridden by governing bankruptcy law. *See Butner v. United States*, 440 U.S. 48, 54–55 (1979). Castillo has not identified any countervailing federal law or policy entitling her to undermine the defendants' state law rights as fixed in the state courts. Nor are we aware

24

of any such law or policy.

To the extent Castillo could have made other arguments challenging either the bankruptcy court's claim preclusion ruling or its issue preclusion ruling, she has forfeited them by not arguing them. *See Loher*, 825 F.3d at 1119. At bottom, the bankruptcy court did not err when it applied claim preclusion and issue preclusion in support of its dismissal.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's dismissal with prejudice of Castillo's adversary complaint.