BETTY B. FLETCHER, Circuit Judge:
 

 We must decide whether the bankruptcy court was correct to give preclusive effect to an issue raised in a prior state court proceeding. Because we conclude that the state court’s treatment of the issue in question satisfies California’s threshold requirements for the application of collateral estoppel, and because we conclude that application of collateral estoppel in this context would further the policies underlying the doctrine, we affirm the Bankruptcy Appellate Panel’s decision affirming the bankruptcy court.
 

 Background
 

 On April 6, 1995, Zachary Kilpatrick sued Billy Baldwin and others in California Superior Court. Kilpatrick’s form complaint concisely stated two causes of ae
 
 *916
 
 tion: one against Baldwin and others for an “intentional tort”; the other against the parents of those alleged to have committed the tort, on a theory of vicarious liability. In his first cause of action, Kilpatrick alleged that “[djefendant GORDON JONES violently struck Plaintiff in the face. Defendants MICHAEL WALLS, BILLY BALDWIN, and DOES 1 to 10, inclusive also either violently struck Plaintiff or assisted the other Defendants in violently striking and injuring Plaintiff.”
 

 Baldwin obtained counsel and participated in discovery by answering Kilpatrick’s interrogatories and submitting to a deposition. The case went to arbitration, and the arbitrator found for Kilpatrick, awarding him $16,000 in general and special damages and $4,000 in punitive damages against all the defendants. Baldwin rejected the arbitrator’s award and requested a trial de novo. Not long after, Baldwin substituted himself as counsel. After Baldwin failed to appear pursuant to an order to show cause, the superior court entered a default judgment against him. On May 28, 1997, the court entered a judgment for Kilpatrick and against Baldwin and other defaulting defendants in the amount of $39,455.14 plus $1,341.03 in court costs.
 

 On July 16, 1998, Baldwin sought Chapter 7 bankruptcy protection. Kilpatrick filed an adversary proceeding, seeking to have Baldwin’s judgment debt adjudged nondischargeable under 11 U.S.C. § 523(a)(6).
 
 [1]
 
 Kilpatrick filed a motion for summary judgment, arguing that under California law, Kilpatrick’s state court complaint plus the default state court judgment against Baldwin collaterally es-topped Baldwin from litigating the issue of whether Baldwin caused “willful and malicious injury” to Kilpatrick. The bankruptcy court granted Kilpatrick’s motion on the theory that Kilpatrick’s state court complaint “only pleaded a cause of action for intentional tort” and that a judgment on such a cause falls within § 523’s exclusion of debts arising from willful and malicious injury. Baldwin appealed to the Bankruptcy Appellate Panel (BAP), which affirmed the bankruptcy court’s decision.
 
 See Baldwin v. Kilpatrick (In re Baldwin),
 
 245 B.R. 131 (B.A.P. 9th Cir.2000). Baldwin now appeals from the BAP’s decision.
 
 [2]
 

 Standard Of Review
 

 “Because we are in as good a position as the BAP to review bankruptcy court rulings, we independently examine the bankruptcy court’s decision, reviewing the bankruptcy court’s interpretation of the Bankruptcy Code de novo and its factual findings for clear error.”
 
 United States v. Hatton (In re Hatton),
 
 220 F.3d 1057, 1059 (9th Cir.2000). In reviewing the bankruptcy court’s grant of summary judgment, we must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the substantive law.
 
 Parker v. Cmty. First Bank (In re Bakersfield Westar Ambulance, Inc.),
 
 123 F.3d 1243, 1245 (9th Cir.1997). No questions of fact are at issue in this appeal; the parties disagree
 
 *917
 
 only about whether the bankruptcy court correctly applied California preclusion law. Thus, our review is entirely de novo.
 

 Discussion
 

 Principles of collateral estoppel apply to proceedings seeking exceptions from discharge brought under 11 U.S.C. § 523(a).
 
 Grogan v. Garner,
 
 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the preclusive effect of a state court judgment in a subsequent bankruptcy proceeding is determined by the preclusion law of the state in which the judgment was issued.
 
 Gayden v. Nourbakhsh (In re Nourbakhsh),
 
 67 F.3d 798, 800 (9th Cir.1995) (citing
 
 Marrese v. Am. Acad. of Orthopaedic Surgeons,
 
 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985)).
 
 [3]
 
 By contrast, what constitutes “willful and malicious injury” under § 523(a)(6) is a matter of federal law.
 
 See Kawaauhau v. Geiger,
 
 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998) (construing “willful and malicious injury” under § 523(a)(6));
 
 see also Miller v. J.D. Abrams Inc. (In re Miller),
 
 156 F.3d 598, 604 (5th Cir.1998) (“[T]he meaning of ‘malicious’ in § 523(a)(6) is controlled by federal law rather than state law.”). In
 
 Geiger,
 
 the Supreme Court held that an act falls under § 523(a)(6)’s “willful and malicious injury” discharge exception only if the act was “done with the actual intent to cause injury.” 523 U.S. at 61, 118 S.Ct. 974. That is, “nondischargeability takes a deliberate or intentional
 
 injury,
 
 not merely a deliberate or intentional
 
 act
 
 that leads to injury.”
 
 [4]
 

 Id.
 
 (emphasis in original);
 
 Bino v. Bailey (In re Bailey),
 
 197 F.3d 997, 1000 (9th Cir.1999). Thus, the bankruptcy court correctly granted Kilpatrick summary judgment only if the default judgment decided the issue of whether Baldwin acted “with the actual intent to cause injury” to Kilpatrick, and only if a California court would find the default judgment to preclude relitigation of that issue.
 

 In California, “[c]ollateral estoppel precludes relitigation of issues argued and decided in prior proceedings.”
 
 Lucido v. Superior Court,
 
 51 Cal.3d 335, 340, 272 Cal.Rptr. 767, 768, 795 P.2d 1223, 1225 (1990) (in bank). California courts will apply collateral estoppel only if certain threshold requirements are met, and then only if application of preclusion furthers the public policies underlying the doctrine.
 
 See id.
 
 51 Cal.3d at 341, 342, 272 Cal.Rptr. at 769, 770, 795 P.2d at 1225, 1226.
 

 A. Threshold Requirements
 

 Collateral estoppel can be applied only if five threshold requirements are met.
 

 First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privi
 
 *918
 
 ty with, the party to the former proceeding.
 

 Id.
 
 at 1225. “The party asserting collateral estoppel bears the burden of establishing these requirements.”
 
 Id.
 
 There is no dispute concerning the fourth and fifth requirements. Baldwin was a defendant in Kilpatrick’s state court action, and the court’s judgment was final before Kilpa-trick brought his nondischargeability action. Baldwin’s argument is that the first three requirements are not met.
 

 i. “Identical Issue”
 

 Baldwin argues that the issue in the adversary proceeding-whether he intentionally acted to injure Kilpatrick-is not the same as the issue raised in the state court litigation. Kilpatrick asserted a claim against Baldwin for an “intentional tort,” alleging, in part, that Baldwin had “violently struck plaintiff.” Under California law, the tort of battery requires the unlawful, harmful, or offensive contact with the person of another.
 
 See People v. Rocha,
 
 3 Cal.3d 893, 899 n. 12, 92 Cal.Rptr. 172, 176 n. 12, 479 P.2d 372, 377 n. 12 (1971) (in bank);
 
 see also Rains v. Superior Court,
 
 150 Cal.App.3d 933, 936-37, 198 Cal.Rptr. 249, 252-53 (1984). In order to be guilty of battery, a defendant must have intended the harmful contact.
 
 See Rocha,
 
 92 Cal.Rptr. 172, 479 P.2d at 377 n. 12;
 
 Mercer-Fraser Co. v. Indus. Accident Comm’n,
 
 40 Cal.2d 102, 115, 251 P.2d 955, 962 (1953) (in bank) (“A negligent person has no desire to cause the harm that results from his carelessness, ... and he must be distinguished from a person guilty of willful misconduct, such as assault and battery, who intends to cause harm.” (internal quotation marks and citation omitted)).
 

 In
 
 Geiger,
 
 the Supreme Court held that an act is covered by § 523(a)(6) if it was committed with “the actual intent to cause injury.” 523 U.S. at 61, 118 S.Ct. 974. Without equating intentional torts with acts covered by § 523(a)(6), the Court noted that § 523(a)(6)’s specification of “willful and malicious injury” “triggers in the lawyer’s mind the category of ‘intentional torts,’.... Intentional torts generally require that the actor intend ‘the
 
 consequences
 
 of an act,’ not simply ‘the act itself.’”
 
 Geiger,
 
 523 U.S. at 61-62, 118 S.Ct. 974 (quoting Restatement (Second) of Torts § 8A, Comment
 
 a
 
 (1964)) (emphasis in original). The fact that Kilpatrick made a claim for an “intentional tort,” alleging that Baldwin “violently struck” him is enough to allege that Baldwin acted with “the actual intent to cause [Kilpatrick] injury.” Thus, the issue raised in the adversary bankruptcy proceeding was the same as the issue raised in the state court action.
 
 [5]
 

 ii. “Actually Litigated” & “Necessarily Decided”
 

 As we have recently noted, under California law, the mere fact that a plaintiff “obtained a judgment by default does not, in itself, foreclose the possibility that the resolution of some issues in the litigation would later have preclusive effect.”
 
 Hannon v. Kobnn (In re Hannon),
 
 250 F.3d 1240, 1246 (9th Cir.2001). In
 
 Hannon,
 
 we explained that in the context
 
 *919
 
 of a default judgment, California law imposes a notice requirement in addition to the five threshold requirements described by
 
 Lucido.
 
 Thus, collateral estoppel may be applied only if the defendant in the prior action “ ‘ha[d] been personally served with [a] summons or ha[d] actual knowledge of the existence of the litigation.”’
 
 Id.
 
 at 1247 (quoting
 
 Williams v. Williams (In re Williams’ Estate),
 
 36 Cal.2d 289, 295, 223 P.2d 248, 254 (1950) (in bank)). In addition, under California law, in order for us to conclude that the issue had been actually litigated in the prior proceeding, we must either find that the court made an express finding on the issue or we must conclude that the issue was necessarily decided in the prior proceeding.
 
 See id.
 
 at 1248 (discussing the express finding requirement);
 
 id.
 
 at 1249 (explaining that, as a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated in that proceeding).
 

 There is no indication in the record as to whether Kilpatrick personally served Baldwin with his state court summons and complaint. However, Baldwin’s participation in the state court litigation clearly shows that he “ha[d] actual knowledge of the existence of the litigation.”
 
 In re Williams’ Estate,
 
 223 P.2d at 254. Moreover, although the state default judgment contains no explicit findings, Kilpatrick’s sole claim against Baldwin was that he acted intending to cause him injury, either by violently striking him, or assisting others in doing so.
 
 [6]
 
 Under these circumstances, the state court could not have granted judgment to Kilpatrick unless it found that Baldwin intentionally acted so as to injure Kilpatrick. Therefore, we conclude that the state court necessarily decided that Baldwin intentionally acted so as to injure Kilpatrick.
 
 [7]
 
 It follows that the issue of whether Baldwin intentionally acted so as to injure Kilpatrick was actually litigated.
 
 See In re Harmon,
 
 250 F.3d at 1248-49.
 

 Because the identical issue was actually litigated and necessarily decided in the prior, state court proceeding, we conclude that the threshold requirements for the application of collateral estoppel are met.
 

 B. Policy Considerations
 

 Even after finding that the threshold requirements are met, California courts will not give preclusive effect to a previously litigated issue unless they find that the public policies underlying the collateral estoppel doctrine would be furthered by application of preclusion to the particular issue before the court.
 
 See Lucido,
 
 272 Cal.Rptr. 767, 795 P.2d at 1226. The California Supreme Court has identified three policies underlying the doctrine of collateral estoppel: “preservation of the integrity of the judicial system, promotion of judicial economy, and protection of liti
 
 *920
 
 gants from harassment by vexatious litigation.”
 
 Id.
 
 at 1227.
 

 With regard to the integrity of the judicial system, the California Supreme Court directs us to inquire whether eliminating the possibility of inconsistent verdicts-which would follow from the application of collateral estoppel-would undermine or enhance the public’s confidence in the judicial system.
 
 See id.
 
 at 1229. Where, as here, the state court was fully capable of adjudicating the issue subsequently presented to the bankruptcy court, we conclude that the public’s confidence in the state judicial system would be undermined should the bankruptcy court relitigate the question of whether Baldwin had acted with the intent to injure Kilpatrick.
 
 Cf. id.
 
 at 1230 (declining to give preclusive effect to issue litigated in parole revocation hearing in subsequent criminal trial because of the “limited nature of [the] inquiry” in the parole proceedings). Moreover, relitigation in bankruptcy court of the issue decided by the state court would conflict with the principle of federalism that underlies the Full Faith and Credit Act.
 
 See Marrese,
 
 470 U.S. at 380, 105 S.Ct. 1327 (“Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts.” (citing
 
 Kremer v. Chem. Constr. Corp.,
 
 456 U.S. 461, 481-83,102 S.Ct. 1883, 72 L.Ed.2d 262 (1982))).
 

 Turning to the second policy, it is obvious that application of collateral estoppel in the present context will promote judicial economy. If Baldwin were not precluded from relitigating the issue, the bankruptcy court would have to conduct an evidentiary hearing in order to determine whether Baldwin intentionally acted to injure Kilpa-trick. Relying on the state court’s determination allows the bankruptcy court to conserve judicial resources.
 

 Finally, we conclude that under these circumstances, application of collateral es-toppel will protect creditors from vexatious litigation. Baldwin had a full and fair opportunity to litigate the issue in the state court proceedings. There is no indication in the record that those proceedings violated Baldwin’s right to due process, nor does Baldwin allege any constitutional infirmity. Baldwin forfeited his right to defend himself in state court. He presents no good reason for having done so. It -would be unfair to Kilpatrick to require him to relitigate before the bankruptcy court what was properly decided by the state court.
 

 We conclude, therefore, that the public policies the California Supreme Court has identified as underlying California’s doctrine of collateral estoppel would be furthered by the application of the doctrine in this case.
 

 CONCLUSION
 

 The bankruptcy court was correct to give preclusive effect to the state court default judgment. For that reason, the decision of the BAP, affirming the bankruptcy court’s grant of summary judgment to Kilpatrick, is
 

 AFFIRMED.
 

 [1]
 

 . Section 523(a)(6) excludes from discharge any debt “for willful and malicious injury by the debtor to another entity or to the property of another entity.”
 

 [2]
 

 . The bankruptcy court had jurisdiction under 28 U.S.C. § 157(b). Baldwin filed a timely notice of appeal from the bankruptcy court’s judgment. The BAP had jurisdiction under 28 U.S.C. § 158(b). Baldwin filed a timely appeal from the BAP's judgment. We therefore have jurisdiction under 28 U.S.C. § 158(d).
 

 [3]
 

 . Baldwin argues that
 
 In re Nourbakhsh
 
 was wrongly decided and that we should use federal rather than state preclusion law to determine the preclusive effect of state court judgments in bankruptcy proceedings.
 
 In re Nourbakhsh
 
 is circuit law, however, and so binding on this panel.
 

 [4]
 

 . Recklessly or negligently inflicted injuries are not sufficient for nondischargeability under § 523(a)(6).
 
 See Geiger,
 
 523 U.S. at 64, 118 S.Ct. 974.
 

 [5]
 

 . Baldwin argues that the issue raised in state court is not the same as that in the adversary proceeding because Kilpatrick’s state court complaint asserts alternative claims. Kilpa-trick does indeed allege alternative claims. He asserts that Baldwin either violently struck him "or assisted the other Defendants in violently striking and injuring” him. However, it is clear from context that under either alternative Kilpatrick alleged that Baldwin acted with the intent to injure him: His allegations appear on a form complaint entitled "CAUSE OF ACTION-Intentional Tort.”
 

 [6]
 

 . The state court's one page amended judgment states, in its entirety:
 

 This matter came on for trial on March 7, 1997 at 9:00 a.m. in Courtroom L of the above-entitled court. Defendant Billy Baldwin failed to appear pursuant to an Order to Show Cause, and his answer was stricken and default entered against him. Plaintiff thereafter provided testimony of his damages.
 

 Judgment is hereby entered for plaintiffs and against default defendants Billy Baldwin, Gordon Jones, Michael Walls, and Anita Jones for $39,455.14 and for court costs of $1,341.03.
 

 [7]
 

 . Baldwin argues that the state court may have based its default judgment on a theory of vicarious liability. This argument relies on a highly implausible reading of Kilpatrick's state court complaint. Kilpatrick did state a claim based on vicarious liability, but, as the bankruptcy court recognized, it was a claim asserted against the
 
 parents
 
 of his alleged assailants.